## John P. Anderson v. Alexis D. Anderson.

1.  JUDGMENTS—*Impeachable for Fraud.*—A judgment of the County Court, on a settlement between guardian and ward, or executor, trustee and *cestui que trust*, is impeachable for fraud in a court of equity, and a judgment by consent or agreement of a party or his counsel is as impeachable in a court of equity as if rendered upon trial of issues.

**Bill to Set Aside a Settlement of Executor's Accounts.**—Tried in the Circuit Court of Madison County; the Hon. MARTIN W. SCHAEFFER, Judge, presiding. Hearing and decree for complainant. Appeal by defendant. Heard in this court at the February term, 1898. Affirmed. Opinion filed August 31, 1898.

HADLEY & BURTON, attorneys for appellant.

A valid judgment sweeps away every defense that could have been raised against the action, and this, too, for the purpose of every subsequent suit, whether founded on the same or different causes; nor will equity relieve the defendant from a judgment on any ground of which he should have availed himself in an action at law. Kelly et al. v. Donlin et al., 70 Ill. 385; Rogers v. Higgins et al., 57 Ill. 247.

A party can not ask for relief in equity on the ground that he has failed or omitted to make a defense at law, even when the judgment is manifestly wrong in law and in fact, or when by allowing it to stand will compel the payment of a debt the defendant does not owe, unless it appears that it was obtained by fraud, or was the result of an accident or mistake. Holmes v. Satelar, 57 Ill. 212.

While a court of chancery has the power to afford relief in a proper case against a judgment at law, it must appear that the party complaining has been guilty of no negligence or *laches*, and that he has been prevented from interposing a defense through accident, fraud or mistake, and without fault on his part. Higgins v. Bullock, 73 Ill. 208; Warren v. Cook, 116 Ill. 203.

No one can object to a judgment which he has permitted to be rendered through his own carelessness, neglect or ignorance. Pray v. Hageman, 98 N. Y. 351; Davies v. Mayor et al., 93 N. Y. 250; Smith v. Smith, 79 N. Y. 634.

By refusing to relieve parties from the consequences of their own neglect it seeks to make them vigilant and watchful. On any other principle there would be no end to the action and there would be an end to all vigilance and care in its preparation and trial. Ewing v. McNairy, 21 Ohio St. 322; Bridge Co. v. Sargent, 27 Ohio St. 237.

In order to justify a court in enjoining the enforcement of a judgment claimed to have been obtained by fraud, mistake or accident, it is necessary for the complainant to show, in addition to the fraud or mistake relied upon, that it could not have been prevented by the use of reasonable diligence on his part, and that he has been diligent in seeking relief. Ratliff v. Stretch, 130 Ind. 282; Hollinger v. Reeme, 138 Ind. 363.

If a court has jurisdiction of the subject-matter and parties, it is altogether immaterial when judgment is collaterally attacked or collaterally called in question. How grossly or manifestly erroneous this proceeding may have been, its final order can not be regarded as a nullity, and can not, therefore, be collaterally impeached. People v. Seelye, 146 Ill. 189.

JOHN G. IRWIN and JAMES KINEALY, attorneys for appellee.

Where a judgment has been obtained by fraud or undue advantage, equity will relieve, even where relief might be had by motion at law. Nelson v. Rockwell, 14 Ill. 375.

An original bill may be maintained to impeach a decree for fraud, or which is manifestly unjust. Lloyd v. Malone, 23 Ill. 43; Johnson v. Johnson, 30 Ill. 215; Hinrichsen v. Van Winkle, 27 Ill. 337; Gooch v. Green, 102 Ill. 513.

Such a bill lies either for fraud in fact or fraud in law, and is a matter of right. Griggs v. Gear, 3 Gilm. 2; Gooch v. Green, 102 Ill. 513; Boyden v. Reed, 55 Ill. 464; Conover v. Musgrave, 68 Ill. 58.

Even a decree entered by consent of parties may be set aside by showing fraud or mistake. Flagler v. Crow, 40 Ill. 414; Cox v. Lynn, 138 Ill. 195; Knobloch v. Mueller, 123 Ill. 554.

Where a defendant fails to make a defense of which he is ignorant at the time of trial, and is guilty of no negligence in failing to discover the same in time to avail of it, and it would be unconscionable to allow the judgment to stand, equity relieves by setting aside the judgment, either for fraud or mistake. C. & E. I. R. R. Co. v. Hay, 119 Ill. 494.

The judgment of the County Court on settlement between guardian and ward, is impeachable for fraud, in a court of equity. Lynch v. Rotan, 39 Ill. 14; Propst v. Meadows, 13 Ill. 157; Carter v. Tice, 120 Ill. 277; Gillett v. Wiley, 126 Ill. 312.

To entitle a defendant to relief against a judgment or decree on the ground of fraud or mistake, it must appear that he had a defense upon the merits, and that such defense

was lost to him.   If the ground of relief set up is mistake
and not fraud, it must be shown that the mistake was not
due to the fault of the losing party or his agent; but if fraud
is charged, as in this case, a good case for relief is made out
by showing that the loss was occasioned by the fraud or act
of the prevailing party.   This is the rule in cases where
there is no relation of trust and confidence.   Ward v. Dur-
ham, 134 Ill. 202.

A settlement upon the basis of an erroneous report is not
conclusive on the ward, nor is a receipt for the balance
shown by an erroneous report conclusive.   After approval
of the account by the County Court, the guardian may be
charged with the money received which he failed to account
for.   Bruce v. Doolittle, 81 Ill. 103.

A settlement pressed upon wards about the time of their
becoming of age by one standing in the place of a guardian
should not be sustained except in so far as it is just and fair
to the ward.   Lehmann v. Rothbarth, 111 Ill. 185.

A person having possession and control of an infant's
estate is liable to account for the same as if a guardian.
Perry v. Carmichael, 95 Ill. 519; Lehmann v. Rothbarth, 111
Ill. 191.

Courts look upon settlements made by guardians with
wards recently come of age with distrust, and will not con-
sider them binding, unless made with the fullest delibera-
tion and the most abundant good faith on the part of the
guardian.   Where a receipt is given by the ward soon after
becoming of age to his former guardian, without a full
knowledge of all material facts, he is not concluded.   It is
only in the absence of undue means used on the part of the
guardian to obtain it, and disclosure of all material facts,
that a release by the ward will be considered binding.   And
for an admitted mistake, even where there has been no
undue influence, the settlement will be set aside in equity.
Jones & Cunningham's Pr. p. 270, Sec. 6 and  note;  Felton
v. Long, 8 Ired. (N. C.) Eq. 224;  Wickiser v. Cook, 85 Ill. 69.

Courts of equity will not permit transactions between
guardian and ward to stand, even when they have occurred

after the minority had ceased, and the relation thereby act-ually ended, if the intermediate period be short, unless the circumstances demonstrate, in the highest sense of the terms, the fullest deliberation on the part of the ward and the most abundant good faith on the part of the guardian. This doctrine is abundantly sustained by the authorities. Carter v. Tice, 120 Ill. 286; Jones v. Lloyd, 117 Ill. 597; Gillett v. Wiley, 126 Ill. 310.

A release by a *cestui que trust* will not be binding unless he is first made fully acquainted with his rights, and the nature and full extent of the liabilities of the trustee. Any concealment, misrepresentation or other fraudulent conduct on the part of the trustee will vitiate such a release. This rule is a general one, applying in all relations of trust and confidence, whether the *cestui que trust* is or is not a minor, or under other legal disability. And the burden of proof is upon the trustee to vindicate the transaction from any shadow of suspicion and to show that it was perfectly fair and reasonable in every respect. Jones v. Lloyd, 117 Ill. 597; Gillett v. Wiley, 126 Ill. 310.

Where there is a relation of trust and confidence, render-ing it the duty of the party committing the fraud to disclose the truth to the other party, diligence is not required and *laches* will not be imputed. Jones v. Lloyd, 117 Ill. 597; Harris v. McIntyre, 118 Ill. 276; Vigus v. O'Bannon, 118 Ill. 335; Gillett v. Wiley, 126 Ill. 312; Farwell v. G. W. U. T. Co., 161 Ill. 596.

The will of the decedent required the investment and accumulation of the trust fund. The rule as to liability for interest is the same as in case of guardians. This requires that on final settlement annual rest be made in stating the account, and that the interest be added each year and com-pounded. The court below charged interest only from date of final settlement to date of decree at the rate of five per cent. The account, or rather the assets, were $7,000 short, and this $5,000 item was withheld from a date far earlier than the date of final settlement, and interest should have been computed for the whole time it was used by appellant.

We have assigned cross-errors for failure to compute the interest correctly, and insist the ruling of the trial court on this point was contrary to the law as laid down in the following cases :   Bond v. Lockwood, 33 Ill. 212; In re Steele, 65 Ill. 322; Cheney v. Roodhouse, 135 Ill. 258; Kattelman v. Guthrie, 142 Ill. 357; Rawson v. Corbett, 150 Ill. 466.

It is not necessary to remand the case for the error in the computation of interest.   The statute authorizes this court, in case of partial reversal, to give such judgment or decree as the inferior court ought to have given.   Starr & Curtis, Vol. 2, Ch. 110, Sec. 81.

Where the record shows error as to interest merely, resting in computation, reversal is unnecessary.   If excessive a remittitur may be entered; if too little interest is allowed, it may be computed by this court and final judgment entered in this court for the correct amount.   Tomlinson v. Earn-Shaw, 14 Ill. App. 593; 112 Ill. 312.

MR. PRESIDING JUSTICE CREIGHTON delivered the opinion of the court.

John Anderson, the father of appellant and appellee, died testate April 11, 1876.   His will was duly admitted to probate.   By the twelfth clause he gave to the heirs of his body, by his wife Margaret, all moneys and personal property remaining after the payment of all other legacies and bequests.   Margaret had two (then infant) children by the testator, appellee and a daughter.   The will provided that in case of the death of one of these children without issue the survivor should have the deceased one's share.   Some time after the death of the testator the daughter died, leaving appellee as the sole residuary legatee.   The testator had, by a former marriage, adult children, for whom he provided, either by gifts executed in his lifetime or by provisions in his will.   Two of these, appellant and David L., he made executors.   They both duly qualified and gave separate mortgages upon their real estate as surety for the faithful performance of their trust.   David L. assumed the active management of the trust, but he died within two

years, at which time appellant took sole charge. Appellant was also guardian for appellee during the latter years of his infancy, but appellee did not reside with appellant. By the eleventh clause of the will the testator had provided a legacy of $5,000 to a son, R. W. Anderson.

David L. made one or two reports to the County Court during his lifetime, and appellant made such reports from time to time thereafter.

After appellee came of age he caused appellant to be cited by the County Court to make final report and pay over the estate in his hands. Appellant appeared and presented a statement which was not satisfactory, and the matter was left open for further investigation. Subsequently the statement was amended by adding to the credit side thereof: "Legacy of R. W. Anderson, paid soon after the death of testator but not credited in former reports, $5,000." This statement was sworn to by appellant, and the clause of the will providing the legacy produced and a credit for it demanded by appellant. This was accepted as true and correct by appellee and his attorneys and the item allowed to stand to the credit of appellant without further investigation, an order approving the account prepared, the balance appearing to be due paid over, a receipt therefor executed, the account "O. K'd" by the attorneys, and the order entered without contention before the court. This occurred August 15, 1893. On May 20, 1897, R. W. Anderson, having learned that appellant had taken credit for this $5,000 in his settlement with appellee, claimed he had not received it from the executors, as he in fact had not, and cited appellant to show cause why he should not pay it to him. In answer to this citation appellant set up an ademption of this bequest, by the testator in his lifetime. Upon the trial of this issue, June 7, 1897, appellant produced a receipt dated August 16, 1875, after the will was made and shortly before the testator died, signed by R. W. Anderson to the testator, for $14,143, covering certain advancements, and also this $5,000 bequest; and appellant testified that this receipt was with testator's

papers; that David had it until he died; that he had had it ever since David's death; that he had been the only executor since David died, for about sixteen years; that he was with the testator a day or two before he died, and that the testator told him he had settled with all his grown children except himself and David; that R. W. had never made any claim until recently, and that he had never known till that time that he pretended to have a claim against the estate on account of that legacy.

The court held that the proof sustained the defense, and dismissed the citation at cost of R. W. Anderson, the claimant. The judgment stands unappealed from and in full force.

About this time appellee first heard of the fact that this legacy was not a proper charge against the estate and had not in fact been paid by the executors "soon after the death of testator," nor at any other time.

On the 18th day of June, 1895, appellee filed the bill in this case against appellant, setting up the facts, charging, in effect, deception, fraud and mistake, and praying that the settlement made and approved in the County Court be set aside; that the account be restated and the correct amount due ascertained, and for payment to him of the sum of $5,000, with interest thereon. To this bill appellant made answer, in effect, denying all deception, fraud and mistake; denying that the legacy provided to be paid to R. W. Anderson was in fact adempted and discharged by the testator in his lifetime, and setting up *laches*, and that the proceedings in the County Court upon said account and the order entered thereon are a complete and effectual bar to this proceeding.

The hearing resulted in a decree in favor of appellee for the sum of $6,071.20.

To reverse this decree appellant brings the case to this court, assigns errors and contends here as set up in his answer and as contended in the Circuit Court. Appellee assigns cross-errors and claims that he should have interest on the $5,000 for a much longer time than was awarded by

the Circuit Court, and that it should be computed with annual rests. The evidence clearly shows that the bequest to R. W. Anderson was fully paid and discharged by the testator in his lifetime, that it was never a proper charge against the estate that came into the hands of the executors and that it was never paid by them.

The amount of the residuary fund due to appellee was larger by that sum of $5,000 than it would have been if this legacy had been a charge against the estate which came into the hands of the executor after the death of the testator.

Over three years elapsed after the settlement in the County Court, before the commencement of this suit, and appellant contends that this long delay constitutes *laches*. What constitutes *laches* depends on all the facts. The evidence shows that appellee had no knowledge or information concerning the disposition of the legacy to R. W. Anderson, except what he learned from appellant. But it is said he ought to have made inquiry and learned. Appellant was trustee and guardian, and it was his duty to disclose to his *cestui que trust* and ward the truth. Appellant produced the will and pointed out the clause which in plain terms provided the legacy, and claimed it had been paid by the executors "soon after the death of the testator," and swore to it. This all looked to be true, seemed reasonable, and appellee had, at that time, no grounds to suspect his trustee and guardian.

We are of opinion there was no want of diligence on the part of appellee at the time of the settlement .or *laches*, on account of delay in bringing his suit.

Appellant's principal reliance appears to be upon his position "that the proceedings in the County Court upon said accounts and the order entered therein are a complete and effectual bar to this proceeding."

It is true as contended for, that the County Court having full jurisdiction of matters of probate and guardianship, is a court of record, and its judgments are to be upheld by the same presumptions applicable to judgments of other courts

of record; and it is true that a judgment by consent or agreement of a party or his counsel is as binding as if rendered upon trial of issues. But it is also true that a judgment of the County Court on a settlement between guardian and ward or executor or trustee, and *cestui que trust*, is impeachable for fraud in a court of equity; and a judgment by consent or agreement of a party or his counsel is as impeachable in a court of equity as if rendered upon trial of issues.

Appellant contends that the evidence fails to show such fraud as will justify a court of equity in setting aside the settlement and order of the County Court thereon, and cites among other cases, Dickson et al. v. Hitt, 98 Ill. 300.

In that case the executor had inventoried some cattle as belonging to the estate, which were claimed by the widow as her separate property, and were given up to her. The executor had also charged and was allowed commissions on some worthless notes which he had not collected.

After final settlement and order of the County Court approving the same, some creditors filed a bill in the Circuit Court to set aside the settlement and order approving the same, and to require the executor to account for the cattle and the commissions. The Supreme Court says : " Whether the cattle allowed by the executor to Mrs. Seaton as her separate property before her husband's death, was in fact her separate property, was a question proper to be raised before the Probate Court on the final settlement, and should have been so presented and determined, and we must presume it was, and adjusted, and if it was not, no excuse is given why it was not. Nor does the evidence show the property belonging to the estate." The executor did not conceal from the court or the creditors any fact and made no false statements. He had inventoried the cattle and he had yielded them up to the widow's claim. These facts were known at the time of the settlement and order. Then there was no evidence that the cattle ever belonged to the estate. Concerning the commissions the court says the County Court erred, but that on the part of the exec-

utor there was no concealment. The whole case turns upon the fact that the executor had concealed no fact, made no false statements, been guilty of no deception, and consequently of no fraud.

On the proceedings in the County Court, in the case before us, appellant concealed the fact that the $5,000 legacy had been satisfied by the testator in his lifetime, and concealed the evidence, which was in his possession, of that fact, stated that the legacy was a valid charge against the estate that came into the hands of the executors, and produced the clause of the will as evidence of it, stated that the executors had paid it, placed it as a credit to himself, in his account, and swore to it. Appellee and the court were ignorant of the facts concealed, and believed the representations and statements made to be true, and acted on them as true; and thereby appellant secured the settlement and procured the order of the court thereon.

We are of opinion appellant's conduct, under the facts in this case, was such fraud as calls upon a court of equity to set aside the settlement and order of the County Court thereon.

Appellee presses with much force his cross-error, and demands that the decree be so modified as to allow him interest on the $5,000 for a much longer period than that reaching back to the date of the settlement and order of the County Court, but the evidence does not enable us to fix such date. The estate consisted of many thousand dollars, and much of it must have been many times invested and reinvested; part of the time doubtless idle and earning nothing. We find no means in this record of determining whether or not the interest on this part of the fund is included in the reports made from time to time. We are rather inclined to the conclusion that the interest was all reported, and that the idea of claiming and taking credit for this $5,000 did not occur to appellant until after his first attempt to settle with appellee.

The decree of the Circuit Court is affirmed.