THE BOARD OF COMMISSIONERS OF GRAHAM COUNTY V.
B. VAN SLYCK *et al.*

1. COUNTY CLERK—*Fees—Salary.* Under the general statute relating
to fees and salaries, county clerks are entitled to no more compen-
sation than the salaries fixed by law; and all fees received by them
for official services should be accounted for and deducted from each
quarterly allowance of salary.

2. ACTION, *Accrues, When.* A cause of action for fees not accounted
for and wrongfully retained by such officer accrues at the end of
each quarter, when the allowance of salary is made.

3. OFFICIAL BOND—*Action, Barred.* An action upon the official bond
of a county clerk to recover for fees received and not accounted for
was commenced more than four years after the last allowance of
salary was made to him by the board of county commissioners.
*Held,* That the action was barred by the three-year statute of limita-
tions. (Civil Code, § 18, subdiv. 2; *Ryus v. Gruble,* 31 Kas. 767.)

*Error from Graham District Court.*

ACTION on an official bond by the *Board of Commissioners*
of Graham county against *Van Slyck* and others.    There was
judgment for defendants on demurrer to the petition, and
plaintiff comes to this court.    The opinion states the facts.

*R. S. Emmons,* county attorney, for plaintiff in error:

Chapter 70 of the Laws of 1870 was repealed in 1875, and
chapter 96, Laws of 1875, enacted in relation to the fees and
emoluments of county clerks, and said act, as amended by
chapter 110 of Laws of 1877, contained the provisions of law
in operation and force in Graham county at the time the de-
fendant Van Slyck was county clerk, as alleged in plaintiff's
petition.

Section 4, chapter 96, Laws of 1875, and § 1, chapter 110,
Laws of 1877, fixed the salary to be paid to such county clerk
out of the county treasury of said county; and further pro-
vided, that such salaries "shall be paid as full compensation
for their services," and that the same shall be "in full for all
the services by law required to be performed in their respec-

tive offices whatsoever." Connecting the provisions of § 2'
chapter 96, Laws of 1875, which require a detailed statement
of "fees received," (not "said fees," enumerated in § 1,) with
the enactment in § 4, chapter 96, Laws of 1875, as amended
by § 1, chapter 110, Laws of 1877, providing that said salary
should be "in full for all the services by law required to be per-
formed in their respective offices whatsoever," it is very clearly
made to appear that the salary therein provided for to be paid
to county clerks was intended by the lawmaker to be all the
compensation that county clerks were entitled to receive, and
that all fees from whatsoever source, collected by such clerks,
were collected for the county, and should be accounted for as
such, and covered into the county treasury, or deducted from
the salary allowed to such clerks, as provided by the statute
herein referred to.

In the case of *Comm'rs of Norton Co. v. Shoemaker*, 27 Kas.
77, under a similar law fixing the salary of the county clerk
of Norton county, as full compensation for all services, this
court said: "Our conclusion, therefore, is that the salary of
the county clerk of Norton county, as fixed by law, cannot
exceed $700 per annum, and that such salary shall be in full
for all services required by law to be performed in such office."

In 1877, the legislature enacted a law providing for the
keeping of a transfer record by the county clerk; (see chapter
145, Laws of 1877;) § 3 of said act provides that "the county
clerk shall receive the sum of 10 cents for each transfer of
lands, and 5 cents for each town lot, the same to be paid by
the party having such transfer recorded." As this act was
passed subsequent to the act fixing the salary of the county
clerk as such "full compensation," the defendant contends
that, inasmuch as such act imposed new duties without any
increased salary or compensation, and without making any
additional provisions, such fees should be accounted for as
provided in chapter 96, Laws of 1875; that said fees thereby
became the property of the county clerk, in addition to
the salary allowed by law. Such a theory, however, is un-

tenable; for to maintain such a theory would be at variance with the doctrine laid down by this court in the' case of *Harvey v. Comm'rs of Rush Co.*, 32 Kas. 159, and authorities therein cited.

The conclusion, therefore, is, that without an express provision of the statute that such transfer-record fees should become the property of the clerk, in addition to the salary fixed by law as "full compensation," the legislature intended to impose a new duty upon county clerks, without increasing the salary or emoluments, and that all such fees so received should inure to the benefit of the county, and be accounted for as provided in chapter 96, Laws of 1875.

*Harwi & Prewitt,* for defendants in error:

Defendants in error claim that the cause of action of the plaintiff in error, if any it has, is barred by the statute of limitation, more than three years having elapsed before the action was begun. See *Ryus v. Gruble*, 31 Kas. 767. Whenever a cause of action is barred by any statute of limitation, the right to maintain an action therefor upon a bond, which simply operates as a security for the same thing, must necessarily cease to exist. When the principal debt or cause of action fails, the security must also fail. A bond is simply a security, collateral to the main cause of action. Ample authority for all these propositions will be found in the following cases: *The State v. Conway,* 18 Ohio, 235, 237, *et seq.; The State v. Blake,* 2 Ohio St. 147; *The State v. Newman,* 2 id. 567; *Mount v. Lakeman,* 21 id. 643; *The State v. Kelly,* 32 id. 430, 431; *Dawes v. Shed,* 15 Mass. 6.

As to when the cause of action, if any the plaintiff in error has, accrued, see *Morrison v. Mullen,* 34 Pa. St. 12; *P. & C. Rld. Co. v. Byers,* 32 id. 22; *Codman v. Rodgers,* 27 Mass. 112; *Steele v. Steele,* 25 Pa. St. 154; *Palmer v. Palmer,* 36 Mich. 487; Civil Code, § 18. See, also, *Taylor v. Miles,* 5 Kas. 499; *Sibert v. Wilder,* 16 id. 176; *A. T. & S. F. Rld. Co. v. Burlingame Township,* 36 id. 629.

The opinion of the court was delivered by

JOHNSTON, J.: This was an action by the board of county commissioners of Graham county, in which they seek to recover upon the official bond executed by B. Van Slyck, as county clerk, and Jerome Shoup and William Wells, as sureties thereon.   In the petition, it is alleged that Van Slyck was duly elected county clerk in November, 1885, and that he duly qualified and entered upon the duties of the office on January 11, 1886.   It is then averred that he has received various amounts as fees for official services of which he failed and neglected to keep an account or present a statement of the same to the board of county commissioners, as the law requires, and that these fees have never at any time been deducted from the salary allowed the county clerk, nor from any quarterly installment of his salary, as the statute requires. It is alleged that, on four different occasions, he received different sums of money as statutory fees for services in and about the sale and transfer of school lands, namely: $37.75, on April 2, 1887; $63.70, on July 2, 1887; $25.50, on January 3, 1888; and $27.90, on October 1, 1888.   It is then alleged that, at various times from January 11, 1886, to January 9, 1888, he collected as transfer fees for entering various conveyances of lands and town lots the aggregate sum of $91.80.   These several amounts are set forth in separate counts of the petition, and it is averred that, on December 19, 1892, the county attorney made a demand in writing for the return and payment of the same, which was refused, and in each count there is a demand that the court in rendering judgment shall add 100 per cent. as a penalty to the amount of recovery, and also a fee of $25 to the county attorney for the prosecution of the action.   Defendants demurred to the petition of the plaintiff, and, among other grounds, alleged that it did not state facts sufficient to constitute a cause of action.   This demurrer was sustained by the court, and, the plaintiff electing to stand upon its petition, it was

40—52 KAS.

adjudged that the action be dismissed, and that the defendants recover their costs. Upon this ruling, two questions are raised for consideration: First, whether the county clerk is required to account for the fees collected, in order that the amount of the same may be deducted from each quarterly installment of salary; and, second, if he must, whether the action to recover these amounts is barred by the lapse of time.

Upon the first question, there is little room for discussion or interpretation. The county clerk is allowed a fixed salary, graduated according to the population of the county, and the statute prescribes that such salary is allowed as full compensation for all services by law required to be performed by him. Originally, the compensation of county clerks was derived from fees alone, which they were authorized to collect for their services, and they were permitted to retain all fees earned and collected; but, in 1875, the policy of the state was changed in this respect, as far as practicable, when it was enacted that the county clerk should be allowed a fixed salary, to be paid by the county. (Laws of 1875, ch. 96.) To carry out this policy and statutory provision, the county clerk was required to keep an account of the fees collected, in a book to be provided for that purpose, showing the amount charged, the amount received, from whom, for what purpose, and the date thereof. Another requirement was, that he should present to the board of county commissioners a quarterly statement, under oath, of the amount thus received by him during the preceding quarter, together with the amount of fees charged and which were due and unpaid, and that the same should be filed with the register of deeds. Another section fixes the salary of the county clerk in accordance with the population of the county, and provides that such salary should be paid "as full compensation," and that the same should "be in full for all the services by law required to be performed in their respective offices whatsoever." It was further provided, that the salaries should be paid in quarterly installments, upon the order of the county commissioners; but it was provided "that

the amount charged by each county clerk as fees herein provided for the preceding quarter shall be first deducted from said quarterly installment." Penalties are provided for the failure to make the quarterly report as the law requires, and the statute prohibits an allowance of salary by the county board until the required report is made by the clerk. The policy of the state in this respect has remained unchanged since the enactment of the law of 1875, and while there have been amendments as to details, the substantial provisions of the statute as then enacted still remain in force. (Gen. Stat. of 1889, ¶¶ 3011–3019.) The language of the statute clearly and conclusively shows that the compensation of the clerk is not affected by the fees which he may collect. It was deemed best by the legislature to give these officers a fixed salary upon which they could rely, rather than to leave them to the fees derived from the varying and uncertain demands of the public for their services. The statute is prospective in its terms and operations, and therefore the fact that subsequent legislatures have changed the schedule of fees or provided other fees for added official duties cannot affect the compensation of these officers. It is the manifest policy of the legislature that all fees charged must be accounted for, and all received deducted from the quarterly allowance of salary which the law prescribes.

1. County clerk—fees—salary.

The other objection to the petition is more serious, and, indeed, it is said that it was the only one considered by the district court, and upon which it rested its judgment. About five years elapsed from the time the board of county commissioners made its last settlement with Van Slyck, when he surrendered his office, before the commencement of this action. The cause of action alleged, as we think, is one upon a liability created by statute, and should have been brought within three years after it accrued. (Civil Code, §18, subdiv. 2.) It is argued that the action being upon an official bond, the five-year statute provided in the fifth subdivision of §18 of the civil code should

3. Official bond—action, barred.

be applied.  This contention cannot be sustained.  An action accrued against the defendant for the fees col-

2. Action, ac-
crues, when.  lected and unaccounted for at the quarterly set-tlement following the receipt of such fees.  The public records disclosed the performance of the official services by the clerk and what fees should have been charged and collected.  The statutory limitation could not be extended by the failure to demand the payment of the fees collected, and in fact no demand is necessary for fees so illegally retained. The cause of action was barred on all the claims included in the petition in January, 1891, although an action on the bond for some purposes might have been brought within a later date.  The statute providing for the five-year limitation is not that a cause of action on a bond shall not be barred until five years have elapsed, but it is that the action "can only be brought within five years after the cause of action shall have accrued."  An interpretation of this provision was before the court in *Ryus v. Gruble*, 31 Kas. 767, where it was held that the wrongs committed by the defendant were the real and substantial foundation for the cause of action, and that the bond was virtually only a collateral security for the enforcement of such cause of action.

"The bond does not give the cause of action; the wrongs or delicts do; and the bond simply furnishes security to indemnify the persons who suffer by reason of such wrongs or delicts; and while the statute cited by plaintiff operates to bar every action brought upon the bond to enforce a cause of action which accrued more than five years prior to the commencement of the action, yet such statute does not operate to suspend the operation of the other statutes of limitation, or to continue in force or revive a cause of action which had already been barred by some one of the other statutes of limitation. Whenever a cause of action is barred by any statute of limitations, the right to maintain an action therefor upon a bond which simply operates as a security for the same thing must necessarily cease to exist."

(See, also, *The State v. Conway*, 18 Ohio, 235; *The State v. Blake*, 2 Ohio St. 147; *The State v. Newman*, 2 id. 567; *Mount*

*v. Lakeman,* 21 id. 643; *The State v. Kelly,* 32 id. 430; *Dawes v. Shed,* 15 Mass. 6.)

Even if a demand had been necessary, it should have been made within a reasonable time, and there being no good reason for delay the cause of action must have accrued more than three years before its commencement. (*A. T. & S. F. Rld. Co. v. Burlingame Township,* 36 Kas. 629; *Bauserman v. Charlott,* 46 id. 480; same case, 50 id. 794; *Rork v. Comm'rs of Douglas Co.,* 46 id. 175.)

In any view of the case the action is barred, and hence the ruling and judgment of the court must be affirmed.

All the Justices concurring.